**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| WALKER COUNTY HOSPITAL CORPORATION, D/B/A HUNTSVILLE MEMORIAL HOSPITAL | Case No. 19-36300 (DRJ) |
| Debtor. | |

## OFFICIAL COMMITTEE OF UNSECURED CREDITORS' STATUS REPORT

The Official Committee of Unsecured Creditors (the "Committee") of Walker County Hospital Corporation, d/b/a Huntsville Memorial Hospital (the "Debtor"), appointed pursuant to section 1102 of Title 11 of the United States Code (the "Bankruptcy Code") in the above-captioned chapter 11 case (the "Chapter 11 Case"), by and through its undersigned proposed counsel, hereby submits this status report (this "Report") in advance of the status conference (the "Status Conference") scheduled at the December 20, 2019 hearing (the "Sale Hearing") concerning the sale of substantially all of the Debtor's assets (the "Sale") to the Walker County Hospital District (the "District") and Huntsville Community Hospital, Inc. ("HCH" and, together with the District, the "Buyer").  In support hereof, the Committee respectfully states as follows:

1.      At the Sale Hearing the Debtor, District and Committee (collectively, the "Parties") jointly agreed that the Sale to the Buyer, as modified by the settlement between the District and the Committee (the "Settlement"), is in the best interest of all stakeholders.  It preserves Huntsville Community Hospital (the "Hospital") as a going concern—a result that is vital to ensuring continuity of healthcare, patient safety and access to jobs for the community—and provides the Debtor's estate with a path towards a confirmable plan that will result in some value for general unsecured creditors.  The Settlement is the result of intensive negotiations between the Parties in the days leading up to the Sale Hearing.  The Committee believes that without the Settlement the

Sale as originally proposed in the stalking horse *Purchase Agreement and Member Substitution Agreement* dated November 22, 2019 (the "Stalking Horse APA"), originally filed as an exhibit to the *Notice of Designation of Stalking Horse Bidder* [Docket No. 108] would result in an administratively insolvent estate.

2.      For example, the District is not assuming any employee liabilities (other than accrued paid time off for the retained employees) despite the District's intent to retain the Debtor's employees.[1]  Such liabilities that are not being assumed include wage claims arising between the end of the final pay period and the date the sale closes (the "Stub Wage Claims"), which would leave postpetition employee wages and related taxes unpaid by as much as the estimated amount of $699,560.00, and the Debtor's employee defined benefits plan.  Without the Settlement, there would have been significant uncertainty with the status of these administrative Stub Wage Claims. The additional value obtained for the estate from the Settlement provides the security that the estate is administratively solvent through the projected closing date of January 13, 2019 and, as a result, able to pay the Stub Wage Claims.

3.      To ensure administrative solvency and a path towards a plan, the Committee agreed to enter into the Settlement notwithstanding the Committee's preliminary findings in its investigation into the District, the Debtor and their relationship which suggests colorable claims that, among other things, the grant of the District's liens were avoidable preferences and that the District's proof of claim should be expunged or reduced.[2]

---

[1] Directly contradicting this Court's statements on the record at the first day hearing regarding the importance of making the employees whole given that they  "make the process work, that make the institution exist, quite honestly that generate the revenue from which [the professionals] will look to be paid."  First Day Hearings Audio, 32:05 [Docket No. 56], available at: https://ecf.txsb.uscourts.gov/cgi-bin/DktRpt.pl?413877256876988-L_1_0-1/.

[2] The Committee has numerous concerns with the District's prior dealings with the Debtor, which may have led, or greatly contributed, to the Debtor's financial troubles and this chapter 11 case.  Briefly, these issues include: (i) the District's liens are possibly avoidable as preferential transfers to a non-statutory insider approximately 120 days before November 11, 2019; (ii) the District's claim may be subject to equitable subordination because the bulk of the claim consists of rental payments that were tripled less than a year after the lease was entered to apparently allow the Debtor

2

4.      Implementing the Settlement terms into a revised asset purchase agreement (the "Revised APA") and revised order approving the sale (the "Revised Proposed Sale Order") has proven difficult notwithstanding the District and the Committee's agreement as to the material terms of the Settlement, as delineated in the email exchange between counsel (the "Settlement Term Sheet") attached hereto as **Exhibit A** and entered into evidence at the Sale Hearing as Court Exhibit 1.

5.      The challenges facing implementation are illustrated by the redline asset purchase agreement (the "District Redline APA") and proposed sale order (the "District Redline Sale Order" and, together with the District Redline APA, the "District Redlines") circulated by the District after the close of business the evening prior to the Sale Hearing.  Despite the District's assertion that the District Redlines implement the terms of the Settlement, the changes contained in the District Redlines materially alter the Settlement as agreed to by the Committee in ways that improve the District's economic position at the cost of general unsecured creditors whose only recovery in this chapter 11 case will arise from the dividends realized from the Settlement.

6.      To that end, the Committee spent the days since the Sale Haring attempting to reach a consensual resolution with the District regarding implementation of the Settlement Term Sheet. Indeed, the Committee and District's financial advisors[3] were in regular communication in an effort to reach a middle ground.  Unfortunately this has proven impossible to achieve by today's deadline.

---

to fund the District's share of supplemental Medicaid payment programs, a practice that the Centers for Medicare & Medicaid Services expressly disavowed; (iii) the District's prepetition claim for rental arrears also appears to include rent that purportedly accrued during the pendency of forbearance agreements in which the District agreed to "abate" certain rent; and (iv) the District's proof of claim addendum is misleading as it vastly overstates its collateral by failing to include the language in the security agreement and UCC financing statement that expressly excludes certain assets from its collateral package.

[3] The Committee's financial advisor is FTI Consulting, Inc. and the District's financial advisor is Ankura Consulting Group, LLC.

AFDOCS/21467892.4
4845-6570-9743.1

7.     There are three material points that separate the parties: (i) the structure of the accounts receivable sharing agreement; (ii) whether the Committee or the District bears the risk of closing being delayed beyond January 15, 2020; and (iii) whether the District can acquire certain real property free and clear of a senior lien without satisfying that lien.

8.     The Committee respectfully asks the Court to hold the District to the express terms of the Settlement Term Sheet.  If the language of the Revised APA and Revised Proposed Sale Order must be decided today, we ask the Court to rule that the terms of the Settlement Term Sheet control.  Alternatively, the Committee requests that the Court extend the Parties' time to resolve these issues until Friday, December 27, 2019 or compel the District and the Committee to promptly mediate their disagreement.

| Issue 1: Gross v. Netting A/R Sharing Structure | |
|---|---|
| Settlement Term Sheet: | • The Settlement Term Sheet provides for an accounts receivable ("A/R") sharing structure whereby the District and the Debtor's estate evenly share (50/50) A/R collected after the District collects accounts receivables in the amount of a "Sharing Threshold" that consists of $4.8 million (representing the total cash paid for accounts receivables subject to certain adjustments) plus the "final cure obligations either paid or assumed for those assumed executory contracts that directly relate to the A/R[.]"<br>• There is no provision for netting A/R in the Settlement Term Sheet other than the inclusion of final cure obligations in the Sharing Threshold. |
| District Redlines: | • Sections 3.9-11 of the District Redline APA contemplates a complex sharing structure that provides, among other things, for the netting of the A/R collected and shared with the Debtor's estate against any third party recoupments, settlements and similar financial deductions.<br>• To ensure that the Debtor's share of the A/R is available for the District to net such recoupments and settlements against, the District also added language requiring the Debtor's share of A/R to be set aside in an escrow account on a quarterly basis that will not be released until the end of the one-year post-closing collection term. |
| Proposed Resolution: | • Notwithstanding that the Settlement Term Sheet does not provide for any netting of the A/R, other than the netting of cure costs at the outset of the sharing period pursuant to the Sharing Threshold, the Committee has engaged in good faith efforts to attempt a resolution of this problem.  The parties have been in discussions about a number of ways to resolve this, but it appears at |

| | |
|---|---|
| | this point that a resolution is unlikely without additional time, the Court's intervention or a mediator being appointed. |
| | <div align="center">Issue 2: Senior Judgment Lien of Espy Services, Inc.</div> |
| Settlement Term Sheet: | • The senior judgment lien of Espy Services, Inc. (the "Judgment Lien") was not contemplated in the Settlement Term Sheet because it was unknown during negotiations.[4] The Judgment Lien on real property in Walker County was not disclosed in any documentation, pleading, schedule, the statement of financial affairs, the first day declaration, the declaration in support of the sale/bidding procedures motion, the original Stalking Horse APA or elsewhere. Indeed, in the motion seeking approval of the bidding procedures and the sale, the Debtor does not disclose the basis to sell the Owned Real Property (as defined in the Stalking Horse APA) free and clear of the Judgment Lien. The Judgment Lien was not disclosed to the Committee until the District Redlines were circulated the evening before the Sale Hearing, combined with the breadth of other issues raised for the Committee the first time in the District Redlines. Apparently, the reason the Judgment Lien had not been disclosed to the Committee was because prior to agreeing to the Settlement, the District had intended on acquiring all of the real property subject to the Judgment Lien. <br><br> • Despite the failure to raise the Judgment Lien during negotiations of the Settlement Term Sheet, the Judgment Lien has a material impact on the economics of the transaction encompassed in the Sale. Indeed, but leaving the Judgment Lien with the Debtor's estate, the District erases the gains gained by the estate in keeping the two real properties the District is no longer acquiring. |
| District Redlines: | • The District Redlines disclosed for the first time the existence of the Espy judgment lien. Both documents provide for the District's acquisition of the vacant parcel of land located near the Hospital (the "Vacant Lot") free and clear of the Judgment Lien despite providing no basis for such relief. *See* District Redline Sale Order ¶ 7; Debtor Redline District APA § 1.1 ("definition of Permitted Encumbrances:"). |
| Proposed Resolution: | • The Judgment Lien was record on June 24, 2019 but the District Liens were not recorded/perfected until July, 2019. As such, the Judgment Lien is senior to the alleged District Liens and the District may only either obtain the Vacant Lot subject to the Judgment Lien or by paying the cash price necessary to satisfy the Judgment Lien. *See In re Daufuskie Island Properties, LLC*, 441 B.R. 60, 64 (Bankr. D.S.C. 2010) ("In purchasing property by credit bid under § 363(k), the credit bidding creditor must pay the mortgages and liens (if any) which have priority senior to its mortgage."). |

---

[4] Although the Judgment Lien is attached to Espy's filed proof of claim form (Claim No. 6), that proof of claim form is marked as being a general unsecured claim.

<div align="center">5</div>

| Issue 3: Risk of Delayed Closing | |
|---|---|
| Settlement Term Sheet: | • With respect to postpetition rent/administrative expense claims, the Settlement Term Sheet provides that the Debtor shall pay the District the reduced rent payment of $250,000 on account of postpetition rent.  Likewise, "[c]onditioned upon a successful closed sale, the District agrees to waive: (i) **100% of its remaining unresolved administrative rent claim (which we believe will be approximately one month's worth of rent)**" (emphasis added). <br><br> • The Settlement Term Sheet clearly provides that all postpetition administrative expense claims of the District in excess of $250,000 shall be waived, subject to the Sale closing.  No limit on the length of time the Sale must close within is provided.  The District's claim waivers, however, are conditioned on the Sale closing and, to the extent it doesn't close, the waivers are ineffective. |
| District Redlines: | • The District Redline Sale Order merely provides for the waiver of "the Administrative Expense Claim only as to post-petition rent owed between November 15, 2019 to January 15, 2020 in excess of $250,000."  District Redline Sale Order ¶ V. |
| Proposed Resolution: | • The provision concerning the administrative expense claims should be enforced as drafted in the Settlement Term Sheet.  The Settlement Term Sheet clearly provides that any administrative expense claims held by the District above $250,000 are waived if and only if the Sale closes.  The costs for any risk of a delayed closing should be borne by the District because timing of closing is not within the Committee's control.  To the extent the closing is delayed to the point that the District chooses not to close the Sale, the failure to satisfy the condition that the Sale close renders the District's waiver unenforceable. |

9.      Given the importance of the hospital to the community, with limited information and despite the weight of information suggesting viable estate claims, the Committee attempted to resolve and settle as many issues as possible in an overall global settlement.  The Committee needs an opportunity to resolve and finalize a deal that faithfully reflects the understanding of the parties last week.

WHEREFORE, the Committee respectfully requests that the Court extend the Parties' time to resolve these issues to Friday, December 27, 2019 or compel the District and the Committee mediate their disagreement; to the extent the language of the Revised APA and Revised Proposed

Sale Order must be decided today, the Committee respectfully request that the Court rule that the terms of the Settlement Term Sheet control.

Dated:  Houston, Texas
        December 23, 2019

ARENT FOX LLP

By:  */s/ Robert M. Hirsh*
     Robert M. Hirsh (SDTX Bar No. 24747)
     Andrew I. Silfen
     George P. Angelich
1301 Avenue of the Americas, 42nd Floor
New York, NY 10019
Telephone:  (212) 484-3900
Facsimile:  (212) 484-3990
Email:      andrew.silfen@arentfox.com
            robert.hirsh@arentfox.com
            george.angelich@arentfox.com

- and -

GRAY REED & McGRAW LLP

By:  */s/ Jason S. Brookner*
     Jason S. Brookner
     Texas Bar No. 24033684
1300 Post Oak Blvd.
Suite 2000
Houston, Texas 77056
Telephone:  (713) 986-7000
Facsimile:  (713) 986-7100
Email:      jbrookner@grayreed.com

*Proposed Counsel for the Official Committee*
*of Unsecured Creditors*

AFDOCS/21467892.4
4845-6570-9743.1

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on the 23rd day of December, 2019, he caused a true and correct copy of the foregoing pleading to be served via the Court's CM-ECF Notification System on all parties who have subscribed for notice in this case, and via electronic mail to counsel for the Debtor and counsel for the District.

<div align="right">

*/s/ Jason S. Brookner*
Jason S. Brookner

</div>

**<u>EXHIBIT A</u>**

Settlement Term Sheet

## Angelich, George

| | |
|---|---|
| **From:** | Angelich, George |
| **Sent:** | Wednesday, December 18, 2019 4:55 PM |
| **To:** | Vrejan, Sandra J. |
| **Cc:** | Blake Roth |
| **Subject:** | RE: Walker - FRE 408 Settlement Discussion - Privileged and Confidential |

Confirmed.

**George P. Angelich**
Partner

Arent Fox LLP | Attorneys at Law
1301 Avenue of the Americas, Floor 42
New York, NY 10019
212.457.5423  DIRECT | 212.484.3990 FAX
george.angelich@arentfox.com | www.arentfox.com

**From:** Vrejan, Sandra J. <sandra.vrejan@morganlewis.com>
**Sent:** Wednesday, December 18, 2019 3:56 PM
**To:** Angelich, George <George.Angelich@arentfox.com>
**Cc:** Blake Roth <Blake.Roth@wallerlaw.com>
**Subject:** RE: Walker - FRE 408 Settlement Discussion - Privileged and Confidential

SUBJECT TO FRE 408
PRIVILEGED AND CONFIDENTIAL

George,

I understand that there were further discussions between FTI and Ankura this afternoon with respect to a potential revised proposal that would be the last and final proposal and serve to resolve any contemplated objections or alleged claims between the Committee and the District/ Newco.  On that basis, we have discussed with clients the below revisions (marked in green) and have authority to propose the following agreement in principle.  The two changes from what I distributed last night are the elimination of the collection fee which would have been paid to Newco and the full waiver (rather than 50%) of the District's second month of post-petition rent.

Once you've had an opportunity to review, please confirm that we can consider the Committee's objections to the sale and/or alleged claims against the District/Newco resolved:

- Immediate payment of $250,000 to the District as payment in full for one month of accrued post-petition rent (i.e., not held in escrow until closing) with the balance of that one month obligation waived (roughly $83,000 waived), thereby resolving one month of the District's administrative rent claim.  (See below as to treatment of remainder of accrued post-petition rent.)
- Increase cash purchase price for A/R by $200,000, from $4.6 million to $4.8 million based on September 30th balance as currently reflected in the APA (i.e., not October)
- Modify the A/R purchase price adjustment mechanism in the APA as follows:

1

- o Collar of +/- $250,000 eliminated, resulting in an upward or downward adjustment of the entire change multiplied by the valuation factor (discussed below)
- o $200,000 increase in base A/R purchase price results in valuation factor increasing from 75.0% to 78.2% based on September A/R balance of $6,138,821.80
- o Initial purchase price on the Closing Date to be calculated bridging September A/R to the latest available A/R NBV (likely November) using approach currently agreed in the APA (after eliminating collar and adjusting valuation factor to 78.2%)
- o Subsequent to closing, final purchase price adjustment to be reconciled against A/R NBV as of the Closing Date (consistently calculated) with (i) any increase in purchase price to be remitted promptly and (ii) any decrease in purchase price to be recouped through the sharing waterfall
- A/R sharing waterfall, as follows:
  - o "Sharing Threshold" equal to the sum of (i) total cash paid for the A/R, plus (ii) final cure obligations either paid or assumed for those assumed executory contracts that directly relate to the A/R (i.e., payor agreements, lab overpayment settlement agreements, actual Medicare RAC recoveries or cost report settlements, etc.)
  - o Once NewCo collects cash on account of purchased A/R up to the Sharing Threshold, subsequent cash collections are split equally (50%/50%) between the bankruptcy estate and NewCo, after NewCo is paid a 10% collection fee
- Release Coldspring and Riverside from the APA and allow the bankruptcy estate to retain those properties in liquidation
- Conditioned upon a successful closed sale, the District agrees to waive: (i) 100% of its remaining unresolved administrative rent claim (which we believe will be approximately one month's worth of rent), i.e. roughly $333,000 waived, (ii) 100% of its unsecured deficiency claim, and (iii) 100% of its lease rejection damages

Regards,

Sandra

**Sandra J. Vrejan**
**Morgan, Lewis & Bockius LLP**
One Federal Street, 32nd Floor | Boston, MA 02110
Direct: 617.341.7750 | Main: 617.341.7700 | Fax: 617.341.7701
sandra.vrejan@morganlewis.com | www.morganlewis.com

**From:** Vrejan, Sandra J.
**Sent:** Wednesday, December 18, 2019 10:15 AM
**To:** 'Angelich, George' <George.Angelich@arentfox.com>
**Cc:** Blake Roth <Blake.Roth@wallerlaw.com>
**Subject:** RE: Walker - FRE 408 Settlement Discussion - Privileged and Confidential

George,

I tried you in the office.  Give me a call when you can.

Thanks,

Sandra

**Sandra J. Vrejan**
**Morgan, Lewis & Bockius LLP**
One Federal Street, 32nd Floor | Boston, MA 02110

Direct: 617.341.7750 | Main: 617.341.7700 | Fax: 617.341.7701
sandra.vrejan@morganlewis.com | www.morganlewis.com

**From:** Angelich, George <George.Angelich@arentfox.com>
**Sent:** Wednesday, December 18, 2019 9:57 AM
**To:** Vrejan, Sandra J. <sandra.vrejan@morganlewis.com>
**Cc:** Blake Roth <Blake.Roth@wallerlaw.com>
**Subject:** Re: Walker - FRE 408 Settlement Discussion - Privileged and Confidential

[EXTERNAL EMAIL]
Sandra,

Thank you. We appreciate the proposal. It is being reviewed by the Committee professionals and we will be getting back to you. In addition, we will undertake client outreach if we see a material or even discernible economic improvement from the last round.

I do not want anything to interfere with the current constructive approach. As a practical matter, we need at least the next 4-8 hours to process this and get client sign off (if that's what happens).  But we need to get an emergency motion in front of the court for scheduling purposes. I do not want to file it absent our collective understanding that it's due to the exigencies and time constraints.

Sent from my iPhone


On Dec 17, 2019, at 11:34 PM, Vrejan, Sandra J. <sandra.vrejan@morganlewis.com> wrote:


SUBJECT TO FRE 408
PRIVILEGED AND CONFIDENTIAL

George,

We've discussed FTI's latest proposal with our client this evening and we would propose the following in an effort to reach a consensual solution that would resolve any outstanding issues with the Creditor's Committee:

- Immediate payment of $250,000 to the District as payment in full for one month of accrued post-petition rent (i.e., not held in escrow until closing) with the balance of that one month obligation waived (roughly $83,000 waived), thereby resolving one month of the District's administrative rent claim.  (See below as to treatment of remainder of accrued post-petition rent.)
- Increase cash purchase price for A/R by $200,000, from $4.6 million to $4.8 million based on September 30th balance as currently reflected in the APA (i.e., not October)
- Modify the A/R purchase price adjustment mechanism in the APA as follows:
    - Collar of +/- $250,000 eliminated, resulting in an upward or downward adjustment of the entire change multiplied by the valuation factor (discussed below)
    - $200,000 increase in base A/R purchase price results in valuation factor increasing from 75.0% to 78.2% based on September A/R balance of $6,138,821.80
    - Initial purchase price on the Closing Date to be calculated bridging September A/R to the latest available A/R NBV (likely November) using approach currently agreed in the APA (after eliminating collar and adjusting valuation factor to 78.2%)

3

- o Subsequent to closing, final purchase price adjustment to be reconciled against A/R NBV as of the Closing Date (consistently calculated) with (i) any increase in purchase price to be remitted promptly and (ii) any decrease in purchase price to be recouped through the sharing waterfall
- A/R sharing waterfall, as follows:
  - o "Sharing Threshold" equal to the sum of (i) total cash paid for the A/R, plus (ii) final cure obligations either paid or assumed for those assumed executory contracts that directly relate to the A/R (i.e., payor agreements, lab overpayment settlement agreements, actual Medicare RAC recoveries or cost report settlements, etc.)
  - o Once NewCo collects cash on account of purchased A/R up to the Sharing Threshold, subsequent cash collections are split equally (50%/50%) between the bankruptcy estate and NewCo, after NewCo is paid a 10% collection fee
- Release Coldspring and Riverside from the APA and allow the bankruptcy estate to retain those properties in liquidation
- Conditioned upon a successful closed sale, the District agrees to waive: (i) 50% of its remaining unresolved administrative rent claim (which we believe will be approximately one month's worth of rent), i.e. roughly $166,500 waived, (ii) 100% of its unsecured deficiency claim, and (iii) 100% of its lease rejection damages

Please let me know whether you'd like to discuss. I have an early morning meeting, but should be available by 9:00 am ET.

Regards,

Sandra


**Sandra J. Vrejan**
**Morgan, Lewis & Bockius LLP**
One Federal Street, 32nd Floor | Boston, MA 02110
Direct: 617.341.7750 | Main: 617.341.7700 | Fax: 617.341.7701
sandra.vrejan@morganlewis.com | www.morganlewis.com

**From:** Angelich, George <George.Angelich@arentfox.com>
**Sent:** Tuesday, December 17, 2019 6:25 PM
**To:** Blake Roth <Blake.Roth@wallerlaw.com>; Vrejan, Sandra J. <sandra.vrejan@morganlewis.com>
**Subject:** Walker

[EXTERNAL EMAIL]
Blake, Sandra,

Seems like the parties are close. We should let FTI and Ankura get it done tonight and if they cannot, we request Friday's hearing adjourn until next week to give the parties additional time.

If you are not okay with a short adjournment, we will file motions at 10:30 a.m. EST tomorrow. Other objections will then be filed later in the day and on Thursday followed by discovery demands on the District. I am sharing this in the interest of total transparency and in the spirit of trying to move settlement forward. We held off filing last night to avoid the distraction that can be caused by briefs of this nature.

The focus has been since day one to work with you to accomplish a fair settlement. We ask that you support the same and ask the District to improve its offer and the Debtor to adjourn the hearing.

Best regards,

**George P. Angelich**
Partner

Arent Fox LLP | Attorneys at Law
1301 Avenue of the Americas, Floor 42
New York, NY 10019
212.457.5423  DIRECT | 212.484.3990 FAX
george.angelich@arentfox.com | www.arentfox.com

CONFIDENTIALITY NOTICE: This e-mail and any attachments are for the exclusive and confidential use of the intended recipient. If you received this in error, please do not read, distribute, or take action in reliance upon this message. Instead, please notify us immediately by return e-mail and promptly delete this message and its attachments from your computer system. We do not waive attorney-client or work product privilege by the transmission of this message.

DISCLAIMER
This e-mail message is intended only for the personal use of the recipient(s) named above. This message may be an attorney-client communication and as such privileged and confidential and/or it may include attorney work product. If you are not an intended recipient, you may not review, copy or distribute this message. If you have received this communication in error, please notify us immediately by e-mail and delete the original message.

CONFIDENTIALITY NOTICE: This e-mail and any attachments are for the exclusive and confidential use of the intended recipient. If you received this in error, please do not read, distribute, or take action in reliance upon this message. Instead, please notify us immediately by return e-mail and promptly delete this message and its attachments from your computer system. We do not waive attorney-client or work product privilege by the transmission of this message.